# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

CRAIG MEYERS,                                )
                                             )
        Plaintiff,                   )
                                             )
    v.                                 )    No. 08 C 540
                                             )
                                             )
NATIONAL RAILROAD PASSENGER    )
CORPORATION,                                 )
                                             )
        Defendant.                   )

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendant National Railroad Passenger Corporation's (Amtrak) motion for summary judgment. This matter is also before the court on Amtrak's motion to strike the report, affidavit, and opinions of Michael Shinnick Ed.D. (Shinnick), Amtrak's motion to strike the report, affidavit, and opinions of Dr. Pietro Tonino (Tonino), and Amtrak's motion to strike the report, affidavit, and opinions of Dr. Gail Rosseau (Rosseau). For the reasons stated below, we grant the motions to strike. We also grant the motion for summary judgment.

## BACKGROUND

Plaintiff Craig Meyers (Meyers) has been employed by Amtrak since 1978 as

1

a pipe fitter and sheet metal worker. Meyers alleges that throughout that time he has been exposed to excessive and harmful cumulative trauma in his work environment. Specifically, Meyers claims that his employment responsibilities have required him to engage in excessive lifting, carrying, reaching, pulling, twisting, and other repetitive motions that have caused him to suffer various occupational injuries to his neck, shoulders, arms, wrists and hands, including carpal tunnel syndrome. According to Meyers, Amtrak failed to use ordinary care and caution and failed to provide Meyers with a reasonably safe place to work. Meyers claims that Amtrak should have provided an adequate ergonomic program to prevent his injuries and that Amtrak was negligent in failing to do so.

Meyers originally filed an action in the Court of Common Pleas of Philadelphia County, Pennsylvania, on March 30, 2007. The Pennsylvania court dismissed the action based on improper venue, but allowed Meyers six months to file a new action. Meyers brought the instant action and includes in the first amended complaint, claims under the Federal Employers' Liability Act, 45 U.S.C. § 51 *et seq.* (FELA). Amtrak now moves for summary judgment and to strike the expert reports and opinions of Meyers' proposed expert witnesses.

## LEGAL STANDARD

Summary judgment is appropriate when the record, viewed in the light most favorable to the non-moving party, reveals that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.

R. Civ. P. 56(c). In seeking a grant of summary judgment the moving party must identify "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)(quoting Fed. R. Civ. P. 56(c)). This initial burden may be satisfied by presenting specific evidence on a particular issue or by pointing out "an absence of evidence to support the non-moving party's case." *Id.* at 325. Once the movant has met this burden, the non-moving party cannot simply rest on the allegations in the pleadings, but, "by affidavits or as otherwise provided for in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). A "genuine issue" in the context of a motion for summary judgment is not simply a "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Insolia v. Philip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir. 2000). The court must consider the record as a whole, in a light most favorable to the non-moving party, and draw all reasonable inferences that favor the non-moving party. *Anderson*, 477 U.S. at 255; *Bay v. Cassens Transport Co.*, 212 F.3d 969, 972 (7th Cir. 2000).

# DISCUSSION

Amtrak argues that it is entitled to summary judgment on all claims brought by Meyers in this action. Meyers' claims are brought under FELA, which holds railroads liable for injuries caused to their employees through negligence. 45 U.S.C. § 51. For claims brought under FELA, "[t]he test . . . 'is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury . . . for which damages are sought.'" *Fulk v. Illinois Cent. R. Co.*, 22 F.3d 120, 124 (7th Cir. 1994)(quoting in part *Rogers v. Missouri Pac. R. Co.*, 352 U.S. 500, 506 (1957))(emphasis omitted). Even though the language in FELA is broad, plaintiffs are still required to prove each of the common law elements of negligence. *Id*; *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 706 (7th Cir. 2009)(stating that "[t]o establish a valid claim for negligence in the state of Illinois, a party must demonstrate that the defendant owed him a duty, that the defendant breached this duty, and that he suffered an injury that was proximately caused by the defendant's breach").

Amtrak asserts three separate arguments in support of its motion for summary judgment. First, Amtrak argues that Meyers' claims are barred by the statute of limitations applicable for claims brought under FELA. Second, Amtrak argues that Meyers has failed to produce sufficient evidence to raise a genuine issue of material fact as to whether Amtrak breached a duty of care with respect to Meyers. Finally, Amtrak argues that Meyers has failed to produce sufficient evidence to raise a genuine issue of material fact as to whether there is causation between Amtrak's

actions and Meyers' injuries.  Amtrak's motions to strike relate directly to their second and third arguments on summary judgment.  In opposition to the motion for summary judgment, Meyers relies on the opinions of Shinnick, a proposed expert witness in the field of ergonomics to support his contention that there was a breach of a duty of care.  To establish causation, Meyers relies on Rosseau and Tonino, who are proposed medical experts.  Amtrak moves to strike all three expert witnesses along with their reports and opinions and argues that, particularly in the absence of such evidence, Meyers fails to raise a genuine issue of material fact for trial.

I. Statute of Limitations

The threshold question for the court is whether Meyers' FELA claims are timely.  There is a three year statute of limitations period for claims brought under FELA.  45 U.S.C. § 56.  The parties agree that, for the purposes of the statute of limitations, the instant action was commenced on March 30, 2007, the date that Meyers filed his action in Pennsylvania state court.  Thus, the parties agree that Meyers' FELA claims would only be timely to the extent that such claims began to accrue on March 30, 2004, or later.

In addressing claims, such as the claims brought in the instant action, where an injury is alleged to have been caused by "continual exposure" to something over a period of time, the Supreme Court has held that a cause of action accrues when the injuries "manifest themselves."  *Urie v. Thompson*, 337 U.S. 163, 170 (1949).  This so-called "discovery rule" states that "a cause of action accrues for statute of

limitations purposes when a reasonable person knows or in the exercise of reasonable diligence should have known of both the injury and its governing cause." *Fries v. Chicago & NW Trans. Co.*, 809 F.2d 1092, 1095 (7th Cir. 1990). This is an objective standard with respect to both the plaintiff's knowledge of the injury and the plaintiff's knowledge of the cause of the injury. *Id.* With respect to the plaintiff's knowledge of the injury itself, an actual diagnosis is not required and symptoms of an injury may suffice for notice. *Id.* at 1095-96. With respect to the plaintiff's knowledge of the cause of an injury "[a]ctual knowledge of causation is not necessary" and it is sufficient if the exposure at issue was one of several "suspected" causes. *Id.* at 1096. The discovery rule also "imposes on plaintiffs the affirmative duty to investigate the cause of a known injury." *Tolston v. National R.R. Passenger Corp.*, 102 F.3d 863, 865 (7th Cir. 1996).

Although in the instant action Meyers' allegations are couched as one claim under FELA, Meyers is actually alleging three separate types of injuries: hand injuries, neck/spine injuries, and right shoulder injuries. Meyers alleges a separate onset date for each of the three injuries, although Meyers contends that all were work related. Thus, the court will look to see whether Meyers had notice of each of these injuries before March 30, 2004.

A. Hand Injuries

It is uncontested that Meyers was experiencing pain and tingling in his hands by January 2004 at the latest. (RSF Par. 32). The undisputed evidence reflects that

on January 30, 2004, Meyers visited his primary care doctor and reported experiencing bilateral hand pain.  (RSF Par. 32).  Eventually, Meyers was referred to Rosseau, a neurosurgeon who performed tests on Meyers and diagnosed him with bilateral carpal tunnel syndrome on March 17, 2004.  (RSF Par. 39-40).

Amtrak argues that since it is undisputed that Meyers was experiencing symptoms of his hand injuries and, in fact, received a diagnosis of bilateral carpal tunnel syndrome prior to March 30, 2004, Meyers' cause of action accrued before the cutoff date for the purposes of the statute of limitations.  Meyers argues that, even if he did have notice of the existence of his carpal tunnel syndrome, a reasonable person would not have known that such injuries were work related before March 30, 2004.  Meyers puts forth evidence in the form of an affidavit indicating that Rosseau told him in February 2004, that his hand problems were "related to alcohol consumption."  (Meyers Aff. Par. 4).  Meyers also points to notations in the records kept by Rosseau in February 2004, indicating that an initial suspected cause of Meyers' carpal tunnel syndrome was alcohol consumption.  (RSF Ex. 5, 4-5). Thus, Meyers contends that he could not have been reasonably expected to suspect that his injuries were work related prior to March 30, 2004, since he had been given a differing explanation by his physician.

Based on the evidence before us, a genuine issue of material fact remains as to when Meyers' cause of action accrued with respect to his hand injuries.  Amtrak argues that we can discount Meyers' affidavit and the notations by Rosseau based on Amtrak's contention that such statements are inadmissible and need not be

considered on summary judgment.  On summary judgment, "the court may consider any evidence that would be admissible at trial" and "[t]he evidence need not be admissible in form . . . but it must be admissible in content."  *Stinnett v. Iron Works Gym/Executive Health Spa, Inc*., 301 F.3d 610, 613 (7th Cir. 2002); *see also Bombard v. Fort Wayne Newspapers*, 92 F.3d 560, 562 (7th Cir. 1996)(stating that "evidence relied upon in support of or opposition to summary judgment must be of the type admissible at trial; a party may not rely upon inadmissible hearsay").

Amtrak first argues that the notations in Rosseau's medical reports are inadmissible hearsay that cannot be relied upon at summary judgment.  However, Federal Rule of Evidence 803(4) excludes from the hearsay rule:

> [s]tatements made for purposes of medical diagnosis or treatment and describing medical history, or past symptoms, pain or sensations, or the inception or general character of the cause or externals source therefore insofar as reasonably pertinent to diagnosis or treatment.

Fed. R. Evid. 803(4).  Furthermore, such a statement could be offered by the plaintiff to show something other than the truth of the matter asserted, such as the effect the statement had on Meyers as the listener.  *See United States v. Inglese*, 282 F.3d 528, 538 (7th Cir. 2002)(indication that an out-of-court statement is not considered hearsay when offered to show the effect such a statement had on the listener).

Amtrak also argues that Meyers' statement in his affidavit that he was told that the potential cause of his carpal tunnel syndrome was alcohol consumption is inadmissible because it contradicts testimony Meyers gave in his deposition.  *Brown*

*v. Family Dollar Stores of IN, LP*, 534 F.3d 593, 598 (7th Cir. 2008)(stating that "[w]e have recognized that a person cannot manufacture a genuine issue of material fact by submitting an affidavit that contradicts proper deposition testimony"). However, in this case Meyers merely indicated in his deposition that he did not "recall" asking Rosseau about the cause of his carpal tunnel syndrome. (Meyers Dep. p. 110-11). Meyers never stated outright that no suggestion was given to him by Rosseau as to the cause of his hand problems. *See Brown*, 534 F.3d at 598 (finding that when there was no outright contradiction the statement in an affidavit was not inadmissible). Furthermore, even if Meyers' statement in his affidavit was not relied upon by the court, the medical records cited to by Meyers mentioning alcohol consumption as a likely cause are sufficient in and of themselves to create a genuine issue of material fact as to whether Meyers should have reasonably been aware, prior to March 30, 2004, that his hand injuries were work-related. Therefore, to the extent that Meyers' FELA claims are based on alleged hand injuries, genuine issue of material facts remain as to whether such a claim, is barred by the statute of limitations.

B. Neck/Spine Injuries

It is also undisputed that during the same period of time that the nature of Meyers' hand injuries were coming to light, doctors discovered several problems with Meyers' neck and spine. (RSF Par. 32-34). Specifically, Meyers admits that he underwent an MRI of his cervical spine on February 10, 2004, which revealed a

number of spinal problems including arthritis, spinal stenosis, and disc protrusion. (RSF Par. 33). Furthermore, on February 16, 2004, Meyers' primary care doctor told Meyers he had severe spondylosis in his spine and discussed treatment options including physical therapy. (RSF Par. 35). Also, when Meyers visited Rosseau for the first time on February 23, 2004, he reported that he suffered from "cervical stenosis" and also reported that there was "mild crackling" when he moved his neck. (SF Ex. J); (RSF Par. 36). Rosseau diagnosed Meyers with cervical spondylosis on February 25, 2004. (RSF Par. 38).

While Meyers admits that such diagnoses were made, Meyers strenuously denies feeling any pain whatsoever in his neck or spine prior to the cutoff date of March 30, 2004. (RSF Par. 32-38). In fact, Meyers states in his affidavit that he did not experience pain in his neck or spine until August 2006. (Meyers Aff. Par. 14). In December 2008, Meyers underwent several cervical surgeries and was out of work for five months. (Meyers Aff. Par. 15). Meyers states in his affidavit that he first believed his neck injuries were related to his work when he underwent his surgery in 2008. (Meyers Aff. Par. 16).

Unlike Meyers' hand injuries, Meyers does not contend that he received a medical explanation for his neck injuries that would have reasonably delayed his awareness that such injuries were work related. Meyers states that he subjectively believed that any neck problems he was experiencing prior to his 2008 surgery were related to his age, but such a subjective belief is not dispositive with respect to the statute of limitations issue at hand. (Meyers Aff. Par. 16); *Fries*, 809 F.2d at 1095

10

(indicating that a plaintiff's awareness of an injury or its cause is an objective review).  As we stated above, a plaintiff has an "affirmative duty to investigate the cause of a known injury." *Tolston*, 102 F.3d at 865 (stating that "[a] plaintiff need not be sure which cause is predominant, as long as she knows or has reason to know of a potential cause").  Thus, Meyers' awareness of the existence of his neck and spinal problems prior to March 30, 2004, would have been sufficient to start the accrual of the statute of limitations.

Meyers' only argument with respect to his neck and spinal injuries is that, although he was diagnosed with such conditions, he was not reasonably aware of the condition since he claims he experienced no pain until after the March 30, 2004, cutoff date for the statute of limitations.  Even when accepting Meyers' contention that he did not feel pain in his neck or spine prior to March 30, 2004, the undisputed evidence in the record reflects that Meyers had ample notice of his neck and spine injuries.  Even though Seventh Circuit does not require an actual diagnosis of an injury to start the clock on the statute of limitations, certainly the existence of an actual diagnosis would be enough to provide notice that an injury exists.  *Fries*, 809 F.2d at 1095.  Thus, the undisputed record reflects that Meyers' FELA claim, to the extent that it is based on his neck and spine injuries, is barred by the statute of limitations.

## C. Right Shoulder Injuries

The parties agree that Meyers did not receive an official diagnosis for injuries

to his right shoulder until well after the statute of limitations cutoff date of March 30, 2004.  Specifically, Amtrak does not specifically deny that Meyers was first diagnosed by Tonino with a rotator cuff tear and labrum tear on or about August 17, 2006.  (RSAF Par. 9).  The parties, however, take contrasting views as to what the evidence in the record shows with regard to the issue of when Meyers first experienced symptoms of right shoulder pain.  Amtrak relies on two sources of evidence to show that Meyers was, in fact, experiencing symptoms of his right shoulder injuries prior to March 30, 2004.  First, Amtrak points to a passing note in the medical records taken by Meyers' physical therapist stating that Meyers claimed to have been experiencing "pain at the right A-C joint" on February 23, 2004.  (SF Ex. K 2).  Meyers disputes the accuracy of such a statement and points out that the medical record cited by Amtrak includes far more discussion of Meyers' pain in his left shoulder which is the pain that Meyers contends he was actually experiencing on that date.  (SF Ex. K 2).  We note that allegations of left shoulder pain are not the subject of this lawsuit.

The second piece of evidence relied upon by Amtrak to show that Meyers was experiencing symptoms of his right shoulder injuries prior to March 30, 2004, is a statement in the medical records of one of his physicians who noted in April 2005 that Meyers had "bilateral shoulder pain, right greater than the left for *several years*." (SF. Ex. O 3)(emphasis added).  Amtrak argues that such a statement suggests that Meyers was experiencing right shoulder injury symptoms prior to March 30, 2004.

As noted above, Meyers strenuously denies that he ever experienced right

shoulder pain prior to March 30, 2004. In support, Meyers relies on his own affidavit and deposition testimony. We note that the Seventh Circuit has found that a party's own self-serving testimony can create a genuine issue of material fact in order to defeat summary judgment. *See Paz v. Wauconda Healthcare & Rehab. Ctr., LLC*, 464 F.3d 659, 664 (7th Cir. 2006)(stating that "[w]e have long held that a plaintiff may defeat summary judgment with his or her own deposition"); *Payne v. Pauley*, 337 F.3d 767, 773 (7th Cir. 2003). The issue of whether Meyers was experiencing symptoms of right shoulder pain prior to March 30, 2004, is an issue that would be within Meyers' personal knowledge. *See Kaba v. Stepp*, 458 F.3d 678, 681 (7th Cir. 2006)(stating that a party may rebut summary judgment using his own affidavit provided that the affidavit is based on personal knowledge). Thus, based on the evidence in the record, there remains a genuine issue of material fact as to whether Meyers' FELA claim, to the extent that it is based on his right shoulder injuries, is barred by the statute of limitations.


II. Motions to Strike

Since we have concluded that genuine issues of material fact remain as to whether Meyers' FELA claims, to the extent that they are based on Meyers' hand and right shoulder injuries, are timely, the next issue is to determine whether Meyers has pointed to sufficient evidence to raise genuine issues of material fact as to his claims on the merits. However, before reaching such issues, the court must first resolve Amtrak's motions to strike Meyers' expert witnesses since Meyers relies on

the testimony of those witnesses in opposing summary judgment.

In opposing the motion for summary judgment, Meyers relies on the expert opinions of Shinnick to put forth evidence that Amtrak had a duty of care which it breached in Meyers' case. Shinnick is being presented by Meyers as an expert in the field of ergonomics. Meyers also relies on the expert opinions of Tonino and Rosseau, who were both also treating physicians with respect to Meyers' injuries, to establish causation. Amtrak moves to strike the reports, affidavits, and opinions of all three proposed expert witnesses arguing that the proposed testimony and opinions offered are not sufficiently reliable and should be excluded under Federal Rule of Evidence 702 (Rule 702). Amtrak also argues that the reports and accompanying affidavits submitted by Tonino and Rosseau fail to conform to the requirements for expert disclosures enumerated in Federal Rule of Civil Procedure 26(a)(2) (Rule 26(a)(2)).

Pursuant to Rule 702 and the analysis provided in *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993), in order for an expert opinion to be admissible: (1) "the witness must be qualified 'as an expert by knowledge, skill, experience, training, or education,'" (2) "the expert's reasoning or methodology underlying the testimony must be scientifically reliable," and (3) "the testimony must assist the trier of fact to understand the evidence or to determine a fact in issue." *Ervin v. Johnson & Johnson, Inc.*, 492 F.3d 901, 904 (7th Cir. 2007)(quoting in part Fed. R. Evid. 702)(stating that the opinion must be "both relevant and reliable"). In assessing the reliability of an expert opinion, a court must consider factors such as "(1) whether the

14

scientific theory can be or has been tested," "(2) whether the theory has been subjected to peer review and publication," and "(3) whether the theory has been generally accepted in the scientific community." *Id.*; *Jenkins v. Bartlett*, 487 F.3d 482, 488-89 (7th Cir. 2007)(stating that "[t]he goal of *Daubert* is to assure that experts employ the same 'intellectual rigor' in their courtroom testimony as would be employed by an expert in the relevant field"); *Tuf Racing Products, Inc. v. American Suzuki Motor Corp.*, 223 F.3d 585, 591 (7th Cir. 2000)(stating that "[t]he principle of *Daubert* is merely that if an expert witness is to offer an opinion based on science, it must be real science, not junk science"). In considering "whether the testimony has been subjected to the scientific method" the court must "rul[e] out any subjective belief or unsupported speculation." *Chapman v. Maytag Corp.*, 297 F.3d 682, 687 (7th Cir. 2002). The party seeking the admission of an expert witness bears the burden of establishing that witness' admissibility. *Lewis*, 561 F.3d 698, 706 (7th Cir. 2009)(citing *Bourjaily v. United States*, 483 U.S. 171, 175-76 (1987)).

Pursuant to Rule 26(a)(2), parties are required to disclose the identities of all expert witnesses the parties intend to call within the time parameters set by the court. Fed. R. Civ. P. 26(a)(2). Rule 26(a)(2) also requires parties to disclose, along with the identities of proposed expert witnesses:

> a written report--prepared and signed by the witness-- . . . contain[ing]:
> (i) a complete statement of all opinions the witness will express and the
> basis and reasons for them; (ii) the data or other information considered
> by the witness . . .; (iii) any exhibits that will be used . . .; (iv) the
> witness's qualifications . . .; (v) a list of all other cases in which, during
> the previous four years, the witness testified as an expert . . .; and (vi) a

statement of the compensation to be paid. . . .

Fed. R. Civ. P. 26(a)(2)(B).  The purpose of the Rule 26(a)(2) disclosure requirements is to "'set forth the substance of the direct examination'" of the expert witness.  *Jenkins*, 487 F.3d at 487 (quoting Fed. R. Civ. P. 26 advisory committee's note).  If a party fails to comply with the requirements set forth in Rule 26(a)(2), that party can be barred from using the evidence as a sanction.  *Id.* at 488; *Musser v. Gentiva Health Servs.*, 356 F.3d 751, 758 (7th Cir. 2004)(stating that "[t]he exclusion of non-disclosed evidence is automatic and mandatory under Rule 37(c)(1) unless non-disclosure was justified or harmless").  The Seventh Circuit has stated that "even treating physicians and treating nurses must be designated as experts if they are to provide expert testimony."  *Musser*, 356 F.3d at 757-58.


A. Motion to Bar Shinnick

Amtrak moves to bar Shinnick as an expert witness and to strike Shinnick's report and affidavit, which is relied upon by Meyers in opposing summary judgment. As stated above, Shinnick is offered by Meyers as an expert in the field of ergonomics.  Shinnick opines that Meyers was exposed to high risk factors for carpal tunnel syndrome, and neck and shoulder work-related musculoskeletal disorders in his work environment at Amtrak.  (Shinnick Aff. Par. 4).  Amtrak argues that Shinnick's opinions fail to meet the standard enumerated in *Daubert* and are inadmissible under Rule 702.

Shinnick is not a medical expert and he does not have a medical background. However, Shinnick's Curriculum Vitae reflects that Shinnick does have an extensive background in the field of ergonomics. Amtrak does not raise a challenge to the qualifications of Shinnick as an expert in ergonomics. Amtrak confines its argument to contesting the reliability of Shinnick's opinions.

Shinnick has prepared a 13-page report setting forth his opinions. (Mot. Strk. Shinnick Ex. B). The report begins by listing the documents that Shinnick reviewed in preparation for the report. Shinnick states that he held two telephone conversations with Meyers and accompanied Meyers on a "site inspection" that lasted several hours. (Mot. Strk. Shinnick Ex. B, 1). Shinnick states that he reviewed the complaint in the instant action, various discovery documents including deposition transcripts, various pieces of medical and ergonomic literature, and Meyers' medical records. (Mot. Strk. Shinnick Ex. B, 1-2). Shinnick's report lists the factual background of the case, which is essentially a repetition of Meyers' factual allegations about his work responsibilities and injuries. (Mot. Strk. Shinnick Ex. B, 2). Shinnick's report also includes a list of the tools Meyers was required to utilize during his work, which was purportedly compiled during Shinnick's visit to Meyers' workplace. (Mot. Strk. Shinnick Ex. B, 3). Based on the above information and his review of the deposition testimony of Amtrak officials, Shinnick concludes: (1) that Meyers was exposed to excess stress levels during his work duties, (2) that Amtrak knew or should have known of the risk factors to which Meyers had been

exposed, and (3) that Amtrak failed to take the proper steps to prevent Meyers' injuries. (Mot. Strk. Shinnick Ex. B, 12-13).

Amtrak argues that Shinnick's opinions are not sufficiently reliable since they lack an essential link between the conclusions that were reached and the methodology on which such conclusions were purportedly based. We agree. Shinnicks opinions have not been subjected to scientific method and consist mainly of unsupported conclusions. Although Shinnick states that he conducted a "site review" to measure and assess the risk factors that were present in Meyers' workplace, a close review of Shinnick's report reveals that Shinnick did not engage in a sufficient scientific analysis that properly supports his conclusions that Amtrak breached a duty of care to Meyers. (Mot. Strk. Shinnick Ex. B, 1). Although Shinnick measured the weight of certain tools and took measurements of the workspace, Shinnick provides no information for how such measurements contributed to his ultimate conclusions. Furthermore, as Amtrak points out, Shinnick failed to engage in the types of analyses that are recommended by the ergonomic literature cited by Shinnick, himself, such as a quantification of physical stress that was caused by Meyers' work functions.

Meyers argues that Shinnick has testified in other courts on such matters, but a review of the cases where Shinnick has been proposed as an expert witness reveals that a number of other courts have concluded that Shinnick's opinions were not sufficiently reliable to meet the *Daubert* standard. Significantly, Shinnick has been

barred as an expert witness twice in this district when seeking to offer opinions very similar to those Shinnick asserts in the instant action. In *Stasior v. National Railroad Passenger Corp.*, 19 F. Supp. 2d 835 (N.D. Ill. 1998) (Williams, J.), the district court barred Shinnick from testifying that Amtrak had subjected the plaintiff in *Stacior* to undue risk factors that caused the plaintiff's injuries. *Id.* at 842. In *Stacior*, as in this case, Shinnick based his proposed testimony on his review of the plaintiff's medical records, court documents, Amtrak's policies and procedures, ergonomic literature, and his in-person observation of the plaintiff's work site. *Id.* at 842. In *Stacior*, as in this case, Shinnick visited the plaintiff's work site only once and the district court noted that "Shinnick did not quantify any of [the plaintiff's] work habits" and "made no attempt to quantify the force" with which the plaintiff engaged in her work activity. *Id.* The district court concluded that Shinnick's opinion was not reliable since he did not test his opinion "in accordance with scientific method." *Id.* at 852.

We note that one distinguishing factor between *Stacior* and the instant action is that in the instant action Meyers is not relying on Shinnick to establish causation. However, Shinnick's opinions regarding the risk factors to which he claims Meyers and the plaintiff in *Stacior* were exposed as well as the purported "methodology" used by Shinnick are strikingly similar. *Id.* Furthermore, as Amtrak points out, Shinnick was again barred from testifying in this district in *Arrington v. National Railroad Passenger Corp.*, 06 C 2278 (Doc. 41) (N.D. Ill. 2008) (St. Eve, J.). In

*Arrington*, the district court noted that "Shinnick opined that Amtrak could have done more to make [the plaintiff's] job safer, without first asking the threshold question of whether Amtrak's workplace was unsafe. *Id.* The court in *Arrington* found that not only were Shinnick's opinions unreliable since he offered little more than a bottom line opinion, but Shinnick's opinions were also not relevant because he failed to offer any evidence that the plaintiff's job was unsafe. *Id.*

We conclude that Shinnick's opinions are not sufficiently reliable and will not assist the trier of fact. In accordance with the court's "gatekeeper function" with respect to proposed expert testimony, the court has a duty to examine the methodology relied upon by the proposed expert. *Smith v. Ford Motor Co.*, 215 F.3d 713, 718 (7th Cir. 2007). In this case, Shinnick's opinions lack the necessary link between the conclusions he reaches and a recognized underlying scientific method. Therefore, we grant Amtrak's motion to strike the report and affidavit of Shinnick and we bar Shinnick as an expert witness in this action.

B. Motion to Bar Rosseau

Amtrak moves to bar Rosseau as an expert witness and to strike Rosseau's report and affidavit, which are relied upon by Meyers in opposing summary judgment. Rosseau is offered by Meyers as a medical expert to show causation between Meyers' work responsibilities and the injuries to his hands, neck and spine. Rosseau was Meyers' treating physician with respect to these injuries and, ironically,

is the same doctor whom Meyers claims allowed him to believe that his injuries were *not* work-related prior to March 30, 2004. Rosseau has submitted a report and affidavit and seeks to offer her opinion that Meyers' carpal tunnel syndrome and cervical spondylosis were "in whole or in part, contributed to and/or aggravated and worsened by his work as a pipefitter for the railroad." (Rosseau Affid. Par. 4). Rosseau's "report" is in the form of a letter addressed to Meyers' attorney, approximately one page in length, indicating that Rosseau reviewed Meyers' medical records and Meyers' job description and, based on that review, believes that Meyers' hand, neck and spine injuries were aggravated by his work. (Mot. Strk. Ex. A, 1).

Amtrak notes that absent from Rosseau's report is any indication of what methods were used by Rosseau to reach her conclusion. Meyers argues in opposition to the motion to strike, that Rosseau clearly used a "differential diagnosis" as the method for reaching her conclusion and that differential diagnosis is a methodology accepted in the Seventh Circuit. (Ans. Mot. Strk. Rosseau 7). It is true that "[a] differential diagnosis satisfies a *Daubert* analysis if the expert uses reliable methods." *Ervin v. Johnson & Johnson*, 492 F.3d 901, 904 (7th Cir. 2007). However, merely citing to differential diagnosis in general is not enough to automatically show that a reliable methodology was used. *Id.* (finding that the opinions of an expert who claimed to use a differential diagnosis methodology were unreliable when the differential diagnosis was "tainted by 'critical flaws'"). In this case, it is impossible to even assess whether Rosseau's differential diagnosis was

properly conducted since Rosseau, herself, does not even affirmatively state that she used a differential diagnosis. Ultimately, there is no information offered by Meyers to show the soundness of Rosseau's methodology underlying her conclusion. Meyers urges the court to accept Rosseau's testimony, particularly in light of the fact that the causation bar in FELA cases is quite lax. However, the burden for causation in this case does not excuse Meyers from his obligation to show that his expert has reached reliable opinions. *Lewis*, 561 F.3d at 706 (indicating that the party seeking the admission of an expert witness bears the burden of establishing that witness' admissibility).

Amtrak further argues that Rosseau's report fails to meet the standards for disclosure set out in Rule 26(a)(2). As mentioned above, Rule 26(a)(2) requires expert reports to include a variety of information including, among other things, "the basis and reasons" for the opinions expressed. Fed. R. Civ. P. 26(a)(2). Rosseau's conclusory "report" fails to include such information along with other necessary information required by Rule 26(a)(2). *Id.* Meyers is not excused from providing a proper expert report for Rosseau based on the fact that Rosseau was also Meyers' treating physician. *Musser*, 356 F.3d at 757-58. Therefore, since Meyers has not provided a basis for the court to conclude that Rosseau's opinions are reliable and since Meyers has failed to produce an expert report compliant with Rule 26(a)(2), we grant Amtrak's motion to strike the report, affidavit, and opinions of Rosseau.

C. Motion to Bar Tonino

Amtrak also moves to strike Tonino as an expert witness and to strike Tonino's report and affidavit, which are relied upon by Meyers in opposing summary judgment. Tonino is offered by Meyers as a medical expert to show causation between Meyers' work responsibilities and the injuries to his right shoulder. Like Rosseau, Tonino was Meyers' treating physician with respect to these injuries. Tonino has also submitted an expert report which, like Rosseau's, takes the form of a one-page letter addressed to Meyers' attorney. (Mot. Strk. Tonino Ex. A). Tonino's report contains even less details than Rosseau's report and merely states that, based on Tonino's knowledge of Meyers' injuries and the fact that Meyers "performs heavy physical labor" at his job, Tonino believes that "although, rotator cuff tears can occur from normal daily wear and tear, engagement in activities such as the type of physical labor this patient performs would more likely than not increase the possibility that this patient would have a disorder of the rotator cuff or the labrum. . . ." (Mot. Strk. Tonino Ex. A, 1).

Tonino's expert report also fails to include any reference to an underlying methodology conducted to reach his conclusion. Once again, Meyers argues that differential diagnosis was clearly performed by Tonino and that such methods should satisfy the requirement of showing a reliable methodology. However, as we stated above, citing differential diagnosis is not a catch-all that automatically provides a valid basis for the reliability of expert opinions. Even when differential diagnosis is

used by a medical expert, it is necessary to show that such a method was properly executed. *Ervin*, 492 F.3d 904. In this case, there is no information provided that would allow the court to assess the reliability of Tonino's expert opinions. We finally note that Tonino's expert report fails to include necessary disclosures such as "the basis and reasons" for the opinions expressed. Fed. R. Civ. P. 26(a)(2). Therefore, since Meyers has not provided a basis for the court to conclude that Tonino's opinions are reliable and since Meyers has failed to produce an expert report compliant with Rule 26(a)(2), we grant Amtrak's motion to strike the report, affidavit, and opinions of Tonino.

III. Motion for Summary Judgment

Amtrak moves for summary judgment arguing that Meyers has not put forth sufficient evidence to raise genuine issues of material fact with respect to the central elements of his FELA claims. As discussed above, Meyers relies heavily on his proposed experts to present evidence relating to Amtrak's duty, Amtrak's alleged breach of that duty, and causation. (SAF 17, 18, 24-32). In the absence of such expert testimony, Meyers has not pointed to any evidence that would raise genuine issues of material fact with respect to his FELA claims. Fed. R. Civ. P. 56(e); *see also Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2003)(describing summary judgment as the "put up or shut up" moment in the lawsuit). Meyers cannot proceed to trial and ask the trier of fact to merely speculate.

*Matsushita Elec. Indus. Co.*, 475 U.S. at 586. Based on the evidence in the record, no reasonable jury could return a verdict in Meyers' favor. Therefore, we grant Amtrak's motion for summary judgment in its entirety.

## CONCLUSION

Based on the foregoing analysis, we grant Amtrak's motions to strike. We also grant Amtrak's motion for summary judgment in its entirety.


Samuel Der-Yeghiayan
United States District Court Judge

Dated:   August 18, 2009